# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  15-cr-00149-RM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    4.  EUGENE CHAVEZ,

      Defendant.

---

## PLEA AGREEMENT

---

      The United States of America, by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the Defendant, Eugene Chavez, personally and by counsel, Thomas Ward, hereby submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I.     PLEA AGREEMENT

      The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, charging a violation of Title 18, United States Code, Section 286, Conspiracy to File False Claims for Refund.  The parties agree that the defendant should be ordered to pay restitution to the Internal Revenue Service (IRS) in the amount of $311,732.43. This amount represents the actual loss to the IRS for the false tax returns submitted to the IRS during the time period the defendant was involved in this conspiracy.

      The defendant agrees that nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or

Court's Exhibit

1

interest due from the defendant for the time period covered by this agreement or any other time period, and he agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period covered by this agreement or any other time period.

The government agrees to not file any additional charges against the defendant based on the information presently known to the government. In addition, the government agrees that at the time of sentencing it will move to dismiss the remaining counts in the Superseding Indictment with respect to this defendant only. Provided the defendant does nothing inconsistent with accepting responsibility between the date of his plea and the date of sentencing, the government agrees to recommend a three-level reduction for acceptance of responsibility.

The government agrees to recommend a sentence at the bottom of the applicable guideline range. The defendant is free to argue for a variance from the applicable guideline range and the government states that it will oppose any such request.

This agreement is submitted to the Court for its consideration pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement,

the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 17; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II.   ELEMENTS OF THE OFFENSE

In order to be convicted of a violation of 18 U.S.C. § 286, Conspiracy to File False Claims for Refund, the following elements would have to be proven by the government beyond a reasonable doubt:

*First*:  The Defendant agreed with at least one other person to obtain or aid in obtaining the payment or allowance of any false, fictitious, or fraudulent claim;

*Second*:  The Defendant knew the essential objective of the conspiracy;

*Third*: The Defendant knowingly and voluntarily participated; and

*Fourth*: There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

*Tenth Circuit Pattern Jury Instructions (Criminal Cases)*, § 2.19 (2011 ed.) (modified for § 286 and to remove overt act requirement); *United States v. Dedman*, 527 F.3d 577, 594 n.7 (6th Cir. 2008) (holding that § 286 has no overt act requirement); *United States v. Lanier*, 920 F.2d 887, 892 (11th Cir. 1991) (same).

## III.    STATUTORY PENALTIES

The maximum statutory penalty for a conviction of Title 18, United States Code, Section 286, is as follows: not more than 10 years of imprisonment; a fine of not more than twice the financial gain of $311,732.43 (or $623,464.86); not more than 3 years of supervised release; and a $100.00 special assessment fee. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV.    COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

## V.    STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider

the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in April 2008.

The parties agree that the government's evidence would be as follows:

In April of 2008, co-defendant Raul Caraveo was detained in the Pueblo County Jail on charges related to a tax fraud scheme. He pled guilty to certain of these charges in September of 2008 and was later incarcerated at the Sterling Correctional Facility (SCF) on this conviction. During his incarceration in the Pueblo County Jail and later at SCF, co-defendant Raul Caraveo orchestrated and carried out a second, nearly identical tax refund scheme with the assistance of fellow SCF inmates the defendant and co-defendant Conrad Archuleta. Co-defendant Raul Caraveo was also assisted by his then wife co-defendant Sabrina Caraveo, his friends and co-defendants Pamila Lucero and Carolina Aragon, co-defendant Pamila Lucero's friend and co-defendant Cristina Portillos, co-defendant Nancy Guzman, and others.

The scheme was carried out in the following manner: co-defendant Raul Caraveo obtained identifying information (names, dates of birth, social security numbers) from Colorado Department of Corrections (DOC) inmates he was incarcerated with and in some instances, the inmates' family members. The identifying information was used by co-defendant Raul Caraveo and other inmates to generate false Forms 1040A. All returns requested a tax refund that was generated by the Earned Income Tax Credit (EITC). Returns were filed for the tax years 2006 through 2013 and contained similar wages, deductions, EITC credits, and refund amounts for each year respectively. The only differing information per year was the primary and dependent's identifying information and the amount requested.

Co-defendant Raul Caraveo and other inmates working with him mailed tax returns to co-defendants Pamila Lucero, Sabrina Caraveo, and Carolina Aragon. These women then provided addresses to add to the returns for receipt of the refund checks and mailed the returns to the IRS. Co-defendants Cristina Portillos and Nancy Guzman allowed their addresses to be used for receipt of the refund checks.

Specifically as to this defendant, in a recorded prison call on December 11, 2008, he asked unindicted co-conspirator Melanie Palumbo[1] to become involved in the tax refund scheme he and co-defendant Raul Caraveo were operating from SCF. Ms. Palumbo agreed to allow the defendant and co-defendant Raul Caraveo use her home address on tax returns for receipt of refund checks.

---

[1]   Ms. Palumbo is charged in Case No. 15-mj-01100-MEH.

The defendant relayed instructions to co-defendant Sabrina Caraveo regarding the mailing of tax returns to the IRS and had regular communications with co-defendant Carolina Aragon regarding the conspiracy. The defendant also instructed co-defendant Conrad Archuleta to tell his wife co-defendant Nancy Guzman to give any refund checks to co-defendant Pamila Lucero. The defendant did not want co-defendant Nancy Guzman to give the refund checks to co-defendant Sabrina Caraveo because these co-defendants believed co-defendant Sabrina Caraveo was keeping the money for herself. Refund checks were cashed by co-defendants Pamila Lucero, Carolina Aragon, and Nancy Guzman.

After the refund checks were cashed, co-defendant Raul Caraveo gave instructions during recorded prison calls on how to divide the money. Co-defendants Pamila Lucero and Sabrina Caraveo and Ms. Palumbo wired money to the defendant's prison account on multiple occasions.

Between December 2008 and June 2014, the defendant was involved in the submission of or receipt of funds from 215 false Form 1040A tax returns. These returns were mailed to the IRS from addresses located with the State and District of Colorado as part of this conspiracy. The total intended loss from these 215 returns is $582,466. From these 215 returns, 119 refunds were issued in the total amount of $311,732.43.[2]

---

[2] One hundred of the refunds were in the form of checks and nineteen were in the form of offsets to satisfy non-IRS debt obligations.

## SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.      The appropriate Guideline is §2B1.1 . The base offense level is 6.

B.      There is an 14-level increase pursuant to §2B1.1(b)(1)(H) (intended loss of more than $400,000 but less than $1,000,000).

C.      The adjusted offense level is therefore 20.[3]

D.      Pursuant to §3E1.1(a) and (b), provided the defendant does nothing inconsistent with accepting responsibility between the date of his plea and the date of sentencing, the defendant should receive the full three-level reduction for acceptance of responsibility.  The resulting total offense level would be 17.

---

[3] In the event the probation office recommends a two-level increase to the base offense level pursuant to U.S.S.G. § 2B1.1(b)(11)(A)(ii), the parties agree that they will each argue that such enhancement does not apply.

E.    The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is ultimately determined by the Court. The parties have tentatively estimated the defendant's criminal history category to be Category VI.

F.    Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

G.    The guideline range resulting from the estimated total offense level of 17, and the tentative Criminal History Category VI, is 51-63 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 24 months (bottom of Category I) to 63 months (top of Category VI).

H.    Pursuant to guideline §5E1.2, assuming the parties' estimated offense level of 17 is accurate, the fine range for this offense would be between $5,000 and $50,000, plus applicable interest and penalties.

I.    Pursuant to §5D1.2(a)(2), if the court imposes a term of supervised release, that term shall be not more than three years. The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

J.    The defendant agrees to pay to the IRS $311,732.43 in restitution.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that

range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## VI.    ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date:    10/27/15

Eugene Chavez
Defendant

Date:    10/27/15

Thomas Ward
Attorney for Defendant

Date:    10/27/15

Martha A. Paluch
Assistant U.S. Attorney